IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREAT AMERICAN LINES, INC., | ) | No. 2:12-cv-0988 |
| | ) | |
| Plaintiff, | ) | Judge Joy Flowers Conti |
| | ) | |
| v. | ) | Chief Magistrate Judge Lenihan |
| | ) | |
| SANOVI-AVENTIS U.S., LLC, *et al.,* | ) | |
| | ) | ECF Nos. 7 & 18 |
| Defendants | ) | |

## REPORT AND RECOMMENDATION

**I.     RECOMMENDATION**

It is respectfully recommended that Defendant Logistics & Distribution Services Corp.'s ("LDS's) motion to dismiss the complaint under 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(3) for improper venue (ECF No. 7) be denied, as more fully set forth below.  It is further recommended that LDS's motion to stay the cross-claim filed by Sanofi-Aventis U.S., LLC ("Sanofi") against LDS (ECF No. 18) be denied.

**II.    REPORT**

    **A.     Factual Background and Procedural History**

Currently pending before the court are two motions filed by Logistics & Distribution Services Corp. ("LDS"):  (1) a motion to dismiss the complaint under Rule 12(b)(3) for improper venue and under 12(b)(1) for lack of subject matter jurisdiction (ECF No. 7), and (2) a motion to stay the cross-claim filed by Sanofi-Aventis U.S., LLC ("Sanofi") against LDS (ECF No. 18).

The plaintiff in this case, Great American Lines, Inc. ("GAL") brought this declaratory judgment action against both Sanofi and LDS based on diversity jurisdiction, seeking a declaration as to its liability and/or rights under certain contracts with each of the defendants.

GAL entered into a Transportation Agreement with Sanofi, a manufacturer of pharmaceuticals, for delivery of Sanofi's product to Amerisource. GAL contracted with LDS for the transport of Sanofi's product to Amerisource. Upon delivery of the freight on October 18, 2011, Amerisource reported that the freight was damaged and refused delivery. On June 14, 2012, Sanofi filed a claim with GAL seeking $2.1 million for the alleged damage to its freight. GAL declined the claim and filed this DEC action seeking a declaration that GAL is not liable to Sanofi pursuant to Part V of the Transportation Agreement entitled, "Loss, Damage, and Delay," which states that GAL is only liable for actual damage to the property resulting from acts or omissions of GAL. GAL maintains that under this provision, Sanofi has failed to establish that the freight suffered any actual damage. In the alternative, GAL seeks limitation of its liability under Part V, paragraph 3, of the Transportation Agreement which provides that GAL's liability is limited to $250,000 per shipment.

GAL also seeks a declaration with regard to whether LDS is required to indemnify GAL under the Master Transportation Brokerage Agreement ("Master Agreement")[1] between GAL and LDS, which contains an indemnity provision. GAL submitted an indemnity claim to LDS which declined that claim.

On August 7, 2012, LDS filed a motion to dismiss the complaint under Rule 12(b)(3) based on the Master Agreement, which contains a forum selection clause indicating that any claims arising from that agreement shall be brought in the State of Michigan.[2] The Master Agreement was entered into on 9/30/10 between LDS and several brokers, one of whom is GAL.

---

[1] Ex. 5 to Mot. to Dismiss, ECF No. 7 at 19-23.
[2] The Master Agreement also provides that Michigan law shall apply to resolve any disputes arising under the agreement.

However, LDS' representative is the only signatory to the Master Agreement.[3] Alternatively, LDS seeks dismissal of the complaint for lack of subject matter jurisdiction based on an arbitration clause which appears in the Broker-Carrier Spot Contract executed on 5/25/04 ("Spot Contract")[4] between LDS and GAL. Significantly, the Master Agreement contains a provision allowing the prevailing party in a dispute resulting in legal action to recover attorney's fees, while the Spot Contract does not contain any such provision.[5]

While the motion to dismiss was pending, Sanofi filed its answer to the complaint with affirmative defenses, and asserted a counterclaim against GAL and a cross-claim against LDS. *See* ECF No. 13. The counterclaim and cross-claim, brought pursuant to the Carmack Amendment, 49 U.S.C. §14706 et seq., seek damages for the alleged damage to the shipment and assert claims for breach of contract under the bill of lading, breach of the U.S. Transportation Quality Assurance Agreement, and negligence. Thereafter, LDS filed a motion to stay the cross-claim filed by Sanofi (ECF No. 18), pending a ruling on LDS' motion to dismiss, to which GAL (ECF No. 25) and Sanofi (ECF No. 26) have filed responses.

Oral argument was held on both of the pending motions on December 3, 2012, at which time counsel for all of the parties appeared and presented arguments in support of their various positions. Counsel for LDS argued for the first time that the determination of which contract applies must be made by the arbitrator, not this Court, and cited in support the Supreme Court's decision in *Rent-A-Center, West, Inc. v. Jackson,* 130 S.Ct. 2772 (2010). Counsel for GAL and Sanofi voiced their disagreement with LDS's position and argued that this Court must make the

---

[3] At oral argument, counsel for GAL argued that although the Master Agreement is not signed by a representative of GAL, GAL's performance after LDS signed the Master Agreement solidifies that contract.
[4] Ex. 2 to Mot. to Dismiss, ECF No. 7 at 11-14.
[5] *See* Master Agreement, ¶13 (ECF No. 7 at 22).

3

threshold determination of which contract applies, not the arbitrator. Counsel for GAL requested leave of court to file a supplemental response to LDS's reliance on *Rent-A-Center*, which was granted, and on December 5, 2012, counsel for GAL filed its supplemental response (ECF No. 31).

As the motions and responses have been fully briefed and argued, the motions are now ripe for disposition.

B.  **Legal Standard**

1.  **Motion to Dismiss Based on Arbitration Agreement**

Under the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ("FAA"), "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. §4. Although LDS has framed its petition for arbitration as a motion to dismiss pursuant to Rule 12(b)(1), the proper standard of review for such petitions is the summary judgment standard of FEDERAL RULE OF CIVIL PROCEDURE 56(a). *Phil Singer Assocs. v. Philips Oral Healthcare, Inc.,* Civ. A. No. 03-3578 (FLW), 2003 WL 23208271, *2 (D.N.J. Dec. 16, 2003) (citing *Berkery v. Cross Country Bank,* 256 F.Supp. 2d 359, 364 n. 3 (E.D.Pa. 2003)); *see also Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 159 n. 3 (3d Cir. 2009) ("The standard for determining whether a genuine issue of material fact exists regarding the existence of an agreement to arbitrate is 'quickly recognized as the standard used by district courts in resolving summary judgment motions pursuant to Fed.R.Civ.P. 56(c).'") (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n. 9 (3d Cir. 1980)). A district court may "compel[ ] arbitration only where there is 'no genuine issue of fact concerning the formation of the agreement' to arbitrate."

4

*Kirleis,* 560 F.3d at 159 (quoting *Par-Knit Mills,* 636 F.2d at 54). "In making this determination, the party opposing arbitration is entitled to 'the benefit of all reasonable doubts and inferences that may arise.'" *Id.* (quoting *Par-Knit Mills, supra*).

### 2. Motion to Dismiss under 12(b)(3) for Improper Venue

Previously, this Court stated the legal standard for a motion to dismiss for improper venue under Rule 12(b)(3):

> In this circuit, defendants have the burden of proving that venue in the selected judicial district is improper. *Myers v. Am. Dental Ass'n,* 695 F.2d 716, 724 (3d Cir.1982) (citation & footnote omitted); *see also Manning v. Flannery*, Civ. A. No. 09–3190, 2010 WL 55295, at *4 & n. 4 (E.D.Pa. Jan.6, 2010) (citing *Myers, supra*) (other citations & footnote omitted). In deciding a motion to dismiss under Rule 12(b)(3), the Court must generally accept as true the allegations in the pleadings. *Heft v. AAI Corp.*., 355 F.Supp.2d 757, 762 (M.D.Pa.2005) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir.2002); *Myers,* 695 F.2d at 724) (footnote omitted). In addition, "[t]he parties may submit affidavits in support of their positions, and may stipulate as to certain facts, but the plaintiff is entitled to rely on the allegations of the complaint absent evidentiary challenge." *Heft,* 355 F.Supp.2d at 762 (citing *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 142 & n. 1 (3d Cir.1992); *Myers,* 695 F.2d at 724). In either event, the Court is required to view the facts in the light most favorable to the Plaintiff. *Id.* (citing *Carteret* and *Myers, supra*).

*Castapheny v. W. Va. State Police,* Civ. A. No. 09-424, 2010 WL 1901817, at *6 (W.D.Pa. April 15, 2010).

### 3. Motion for Stay

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936); *see also Commw. Ins. Co. v. Underwriters, Inc.,* 846 F.2d 196, 199 (3d Cir. 1988) (citing *Landis, supra*). As such, the authority of the district court to stay an action, where a stay is not mandatory, is

5

firmly within the court's discretion. *First Am. Title Ins. Co. v. MacLaren, L.L.C.,* Civ. A. No. 10-cv-363 (GMS), 2012 WL 769601, *4 (D.Del. Mar. 9, 2012) (citing *Landis, supra*; *Cost Brothers, Inc. v. Travelers Indem*. Co., 760 F.2d 58, 60 (3d Cir.1985)). In determining whether a stay of the litigation is appropriate, a court must balance the interests favoring a stay against the interests frustrated by a denial of a stay. *Id.* (citing *Cherokee Nation of Ok. v. United States,* 124 F.3d 1413, 1416 (Fed. Cir. 1997)). In doing so, a court should consider the following factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Id.* (citing *Xerox Corp. v. 3 Comm. Corp.,* 69 F.Supp. 2d 404, 406 (W.D.N.Y. 1999)). Moreover, the party moving for the stay bears the burden of showing "a clear case of hardship or inequity" in the case proceeding, "if there is even a fair possibility that the stay . .. will work damage" on another party. *Landis,* 299 U.S. at 255; *Gold v. Johns-Manville Sales Corp.,* 723 F.2d 1068, 1075-76 (3d Cir. 1983) (citing *Landis, supra*).

C. **Discussion**

1. **Motion to Dismiss**

LDS has moved to dismiss the complaint for improper venue under Rule 12(b)(3) and, alternatively, for lack of subject matter jurisdiction under 12(b)(1) based on an arbitration provision in the Spot Contract. Because this Court's subject matter jurisdiction is at issue as to the indemnity claim between GAL and LDS, the Court will address LDS' alternative argument first.[6]

---

[6] At oral argument, counsel for LDS appears to have elevated his alternative argument—that the Court lacked subject matter jurisdiction due to an arbitration provision in the Spot Contract—to

### a. The Arbitration Provision

"The Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq*. ("FAA"), creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate disputes." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir.2009) citing *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178-79 (3d Cir. 1999)(citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n. 32 (1983)). "Congress designed the FAA to overrule the judiciary's longstanding reluctance to enforce agreements to arbitrate and its refusal to put such agreements on the same footing as other contracts, and in the FAA expressed a strong federal policy in favor of resolving disputes through arbitration." *Id.* (internal citations and footnote omitted).

The FAA applies to written arbitration provisions contained in any contract evidencing a transaction involving interstate or foreign commerce, requiring that agreements to arbitrate be enforceable to the same extent as other contracts. 9 U.S.C. §§ 1, 2; *Green Tree Fin.*, 183 F.3d at 178. The FAA also provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Notwithstanding the strong federal policy favoring arbitration, the FAA requires the court to make the following threshold determinations before ordering arbitration: (1) whether the parties entered into a valid agreement to arbitrate; and (2) whether the specific dispute falls within the scope of that agreement. *Century Indem. Co.,* 584 F.3d at 523 (citing *Kirleis,* 560 F.3d at 160) (other citations omitted). "Because an arbitrator's authority derives solely from the

---

his primary argument, when he indicated that he was not waiving the venue issue, as counsel for GAL had suggested, but rather, he was reserving the venue issue as his third tier argument.

parties' agreement to submit their disputes to arbitration, *AT&T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 648-49 (1986), a party cannot be compelled to submit a dispute to arbitration unless it has agreed to do so. *U.S. Small Bus. Admin. v. Chimicles*, 447 F.3d 207, 209 (3d Cir. 20067); *China Minmetals*, 334 F.3d at 289-90." *Century Indem. Co.,* 584 F.3d at 523-24 (footnote omitted). "To determine whether the parties have agreed to arbitrate, we apply 'ordinary state-law principles that govern the formation of contracts.'" *Id.* at 524 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Thus, in the case at bar, the Court must first determine whether an agreement to arbitrate exists between GAL and LDS. That determination hinges, however, on which contract—the Master Agreement or the Spot Contract—is the enforceable contract between GAL and LDS. LDS and GAL dispute which of these contracts governs the indemnity claim. LDS maintains that the Spot Contract is the controlling contract, as it is the only one signed by both parties. On the other hand, GAL submits that the Spot Contract was cancelled and replaced by the 2010 Master Agreement. Therefore, according to GAL, because the Master Agreement does not contain an arbitration provision, this Court has subject matter jurisdiction to decide its indemnity claim against LDS.

It is clear from the pleadings, as well as the parties' arguments in their briefs and at oral argument, that factual issues exist as to whether GAL and LDS intended that the 2010 Master Agreement would supersede and replace the Spot Contract. Moreover, both GAL and LDS have submitted affidavits in support of their respective positions on LDS's motion to dismiss. *Compare* Aff. of Theresa Gruppo, Ex. 1 to Mot. to Dismiss, ECF No. 7 at 9-10, with Aff. of Mark. Pietropola, Ex. A to GAL's Brief in Opp'n to Mot. to Dismiss, ECF No. 14-1 at 2-3. At the very least, GAL's affidavit is sufficient at this stage to support its position because in the

summary judgment context, the Court must give the party opposing a motion to compel arbitration the "benefit of all reasonable doubts and inferences that may arise." *Kirleis,* 560 F.3d at 159 (quoting *Par-Knit Mills,* 636 F.2d at 54).

Where factual issues exist as to the making of an agreement containing an arbitration clause, the FAA is dispositive. Section 4 provides that where an aggrieved party petitions a federal court for an order compelling arbitration:

> The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, . . . the court shall hear and determine such issue."

9 U.S.C. §4. Thus, because it is unclear which contract governs the dispute between GAL and LDS, an issue exists as to the making of the arbitration agreement, which must be determined by the court (or jury) and not the arbitrator. *Smith Wilson Co. v. Trading & Development Establishment,* 744 F.Supp. 14, 17 (D.D.C. 1990) (whether the parties ever entered into an arbitration agreement in the first place must be resolved by the court and not an arbitrator "since there is no authority to require a party to submit to arbitration if there never was an agreement to arbitrate.") (citing *Nat'l R.R. Passenger Corp. v. Boston & Maine Corp.,* 850 F.2d 756, 761 (D.C. Cir. 1988)). *See also Howsam v. Reynolds,* 537 U.S. 79, 83 (2002) ("arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."); *Quilloin v. Tenet HealthSystem Philadephia, Inc.,* 673 F.3d 221, 229 (3d Cir. 2012) ("in order to qualify as a question of arbitrability that the court may consider, the

9

challenge must 'relat[e] to the making and performance of the agreement to arbitrate.'") (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404 (1967)).

Contrary to the above authority, at oral argument, counsel for LDS argued for the first time that based on the Supreme Court's decision in *Rent-A-Center,* the arbitrator, not the court, should decide the threshold issue of which contract applies. Thus, LDS submits that its motion to dismiss should be granted so that the dispute between LDS and GAL can proceed to arbitration. In response, GAL argues that *Rent-A-Center* is distinguishable on its facts and, therefore, inapposite to the case at bar. Moreover, GAL contends that based on the Third Circuit's recent decision in *Quilloin*, the threshold question of which contract governs is a question to be decided by the court not an arbitrator. The Court finds *Rent-A-Center* is inapposite here as it is distinguishable on its facts.

In *Rent-A-Center,* the Supreme Court was asked to decide whether, pursuant to the Federal Arbitration Act, 9 U.S.C. §§1-16, a district court may decide a claim that an arbitration agreement is unconscionable, notwithstanding a provision in the arbitration agreement that explicitly assigns that decision to the arbitrator. 130 S.Ct. at 2775. As a condition of his employment, the respondent executed an arbitration agreement, which required arbitration of all "'past, present or future' disputes arising out of [his] employment with [petitioner] Rent-A-Center . . .." *Id.* (quoting appendix). The arbitration agreement also contained a delegation provision, which provided: "The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable." *Id.* (quoting appendix) (internal quotation marks

omitted). Rent-A-Center sought to enforce the delegation provision of the arbitration agreement. 130 S.Ct. at 2779.

With regard to the delegation provision, the Supreme Court explained:

> The delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement. We have recognized that parties can agree to arbitrate "gateway" questions of "arbitrability," such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy. . . . An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.

*Id.* at 2777-78 (internal citations and footnote omitted). The question before the Supreme Court in *Rent-A-Center* was whether the delegation provision was valid under Section 2 of the FAA. The Supreme Court concluded that it was, as the respondent failed to challenge it specifically. *Id.* at 2779. Thus, the Court held it was required to enforce the delegation provision under Sections 3 and 4 of the FAA, and any challenges to the validity of the arbitration agreement as a whole would be left to the arbitrator to decide. *Id.*

*Rent-A-Center* is distinguishable on two fronts. First, unlike the case at bar, there was no dispute in *Rent-A-Center* that the contract containing the arbitration clause was the governing contract. Here there are two contracts that could potentially govern the dispute between GAL and LDS—the earlier Spot Contract which contains an arbitration provision, or the later Master Agreement which does not contain an arbitration provision. The FAA makes clear that the court (or jury if factual issues exist) is to decide which contract governs the dispute. Second, unlike the agreement in *Rent-A-Center,* here neither the Spot Contract nor the Master Agreement contains a delegation clause. Therefore, since the parties have not agreed to arbitrate threshold issues concerning the arbitration, 9 U.S.C. §4 controls here, and Section 4 requires that the Court

11

decide which contract governs. Thus, *Rent-A-Center* is inapposite to the dispute in the instant matter.

Accordingly, the Court finds that the dispute between GAL and LDS involves the making of an agreement to arbitrate and therefore, the court, not the arbitrato,r must decide the threshold question of which contract governs. Thus, the Court recommends that LDS's motion to dismiss for lack of subject matter jurisdiction, based on the arbitration provision in the Spot Contract, be denied.

**b. Improper Venue**

LDS has also moved to dismiss the complaint under Rule 12(b)(3) for improper venue.[7] In support, LDS argues that in the event it is determined that the Master Agreement is the governing contract between it and GAL, a forum selection clause contained in that agreement requires that any claims arising from that agreement shall be brought in the State of Michigan.[8] In response, GAL submits that the existence of a forum selection clause does not make venue improper. Rather, according to GAL, the forum selection clause is but one of several factors to be weighed if and when LDS moves to transfer venue pursuant to 28 U.S.C. §1404(a). Under a §1404(a) balancing of the factors, GAL submits that the factors strongly favor keeping this action in the Western District of Pennsylvania.

The Court finds LDS' motion to dismiss based on improper venue is premature at this time. As explained above, factual issues exist as to which contract governs the dispute between

---

[7] LDS is seeking dismissal based on improper venue rather than requesting that the case be transferred based on the forum selection clause. While dismissal is a permissible means of enforcing a forum selection clause that allows suit to be filed in another federal forum, a district court may also *sua sponte* weigh the factors under 28 U.S.C. §1404(a) to determine whether transfer is the better course. *Salovaara v. Jackson Nat'l Life Ins. Co.,* 246 F.3d 289, 298-99 (3d Cir. 2001) (citing *Crescent Int'l Inc. v. Avatar Communities, Inc.,* 857 F.2d 943 (3d Cir. 1988)).
[8] The Master Agreement also provides that Michigan law shall apply to resolve any disputes arising under that agreement.

12

GAL and LDS. Moreover, if it is ultimately decided that the Spot Contract applies, then the 12(b)(3) motion will be moot. Thus, the merits of LDS's motion to dismiss for improper venue cannot be addressed unless and until it is determined that the Master Agreement governs their dispute.[9] Accordingly, the Court recommends that the motion to dismiss for improper venue be denied at this time, but LDS be allowed to refile said motion if it is determined that the Master Agreement governs the dispute between GAL and LDS.

### 2. Motion to Stay Cross-Claims of Sanofi

LDS has also moved to stay the cross-claim filed by Sanofi (ECF No. 18), pending a ruling on LDS' motion to dismiss. In support, LDS argues that if the Spot Contract is applicable, the dispute must be arbitrated, and thus a stay of proceedings is appropriate where a party properly invokes an arbitration provision. If the Master Agreement controls the dispute, the matter is properly venued in the Western District of Michigan. Under either ground, LDS submits that it should not be put to the time, burden and expense of responding to a cross-claim that very likely will not exist after the court rules on the underlying dispositive motion.

GAL and Sanofi both oppose LDS' motion to stay Sanofi's cross-claims. GAL urges the court to deny LDS' motion to stay Sanofi's cross-claims for three reasons. First, GAL submits that resolution of its pending motion to dismiss will not impact Sanofi's cross-claims or otherwise result in LDS being removed from this action. Indeed, resolution of Sanofi's cross-claims and counterclaims may render GAL's indemnification claim versus LDS moot. If the court determines that GAL is not liable to Sanofi for the damages to its freight, then GAL's

---

[9] Indeed, to render a decision on the motion to dismiss for improper venue at this juncture would be the equivalent of issuing an advisory opinion, which the Court is precluding from doing. *Camreta v. Greene,* 131 S.Ct. 2020, 2038 (2011) (Kennedy, J., dissenting) ("The 'judicial Power' is one to render dispositive judgments, not advisory opinions.") (quoting *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 219 (1995)) (internal quotation marks omitted).

indemnification claim against LDS is moot. Second, GAL submits that the arbitration clause between it and LDS is not enforceable because the Master Agreement, which does not contain an arbitration clause, supersedes the Spot Contract. GAL maintains that at this early stage, LDS is improperly asking the court to make factual determinations as to which contract applies without the benefit of any discovery. Third, even if the Spot Contract does govern and thus the arbitration clause applies, GAL submits that Sanofi's cross-claims are not subject to arbitration, and the FAA does not require the Court to stay the adjudication of non-arbitrable claims. In fact, arbitration of the issue as to whether LDS must indemnify GAL will not resolve the central issue of whether Sanofi is entitled to recover more than $2 million in damages from LDS or GAL. For all of these reasons, GAL asks the Court to deny LDS' motion to stay Sanofi's cross-claims.

In opposing LDS's motion to stay its cross-claims, Sanofi argues that it is not privy to bound by, or subject to either the Master Agreement or Spot Contract. Nor do its cross-claims against LDS arise from either agreement, but rather, are based upon the bill of lading contract for the interstate carriage of the subject shipment which makes no reference to, nor incorporates by reference, either of the agreements upon which LDS bases its motion to stay the cross-claims. In addition, Sanofi submits that its cross-claims against LDS are based upon its own jurisdictional basis which has not been challenged by LDS in its pending motions. Sanofi further submits that no issues exist with regard to venue or immunity, nor are its cross-claims subject to any foreign forum selection clause or arbitration clause. Because neither the arbitration clause issue nor the venue issue exists in its cross-claims, Sanofi maintains that no basis exists for staying the cross-claims asserted by it against LDS and GAL.

In weighing the competing interests presented here, the Court finds that a stay of Sanofi's cross-claim against LDS is not warranted. First, staying the cross-claim would clearly prejudice

Sanofi more than LDS, as the Court has determined that an issue of arbitrability exists which precludes the Court from ordering the dispute between GAL and LDS to arbitration, thus eliminating the basis for the stay. Moreover, LDS has not argued, nor does it appear, that Sanofi's cross-claim is subject to arbitration,[10] and the FAA does not require a court to stay the adjudication of non-arbitrable claims. *Mendex v. Puerto Rican Int'l Cos., Inc.,* 553 F.3d 709, 711-12 (3d Cir. 2009) (finding 9 U.S.C. §3 did not require mandatory stay of non-arbitrating parties claims while parties whose claims were subject to arbitration proceeded to arbitration; rather decision whether to stay litigation among non-arbitrating parties pending the outcome of arbitration is best left to district court as a matter of its discretion to control its docket) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 20 (1983) (citing *Landis,* 299 U.S. at 254-55)). *See also Lippus v. Dahlgren Mfg. Co.,* 644 F. Supp. 1473, 1483 (E.D.N.Y. 1986) (finding stay not warranted where trial on merits of non-arbitrable claims may result in finding of no derivative liability on the claim subject to arbitration, thereby rendering arbitration moot, and where arbitration proceeding would not settle any of the factual questions in the non-arbitrable claims) (citing *Wren Disributors, Inc. v. Phone-Mate, Inc.,* 600 F.Supp. 1576, 1581 (E.D.N.Y. 1985)). Similarly here, proceeding on the merits of Sanofi's cross-claim may result in a finding of no liability, thus rendering the arbitration of the indemnification claim moot.

Second, granting a stay of Sanofi's cross-claim would not simplify the issues. To the contrary, a determination on the merits of Sanofi's cross-claim against LDS in LDS' favor would moot GAL's indemnification claim against LDS. Moreover, because discovery will be necessary to resolve the arbitrability question of which contract governs, it will be more efficient, from

---

[10] Unlike the dispute between GAL and LDS, there has not been any challenge to the Court's jurisdiction and venue over Sanofi's cross-claim.

both a cost and time standpoint, to allow discovery to be conducted on the cross-claim as well, as there will likely be an overlap of the witnesses to be deposed and of other discovery requests. This will also eliminate duplication and delay in the litigation. Finally, discovery has yet to commence in this case, and as the Court found above, it would be more efficient to allow discovery to be conducted as to both the indemnification claim as well as Sanofi's cross-claims against LDS and GAL for damages to its shipment.

Accordingly, the Court finds that a balancing of these factors demonstrates a fair possibility that the stay would cause damage to Sanofi.[11] As LDS has not met its burden of showing a "clear case of hardship or inequity" if Sanofi's cross-claim is allowed to proceed, the Court recommends that LDS' motion to stay be denied.

## III. CONCLUSION

For the reasons set forth above, the Court recommends that LDS's motion to dismiss the complaint under 12(b)(1) for lack of subject matter jurisdiction (ECF No. 7) be denied. The Court further recommends that the motion to dismiss the Complaint under Rule 12(b)(3) for improper venue (ECF No. 7) be denied at this time, but LDS be allowed to refile said motion if it is determined that the Master Agreement governs the dispute between GAL and LDS. Finally, it is recommended that LDS's motion to stay the cross-claim filed by Sanofi-Aventis U.S., LLC ("Sanofi") against LDS (ECF No. 18) be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of a copy of this Report and Recommendation to file objections. Any party opposing the

---

[11]Sanofi's cross-claim can be decided independently from the dispute between GAL and LDS, i.e., whether LDS must indemnify GAL is not dispositive of whether Sanofi is entitled to recover $2 million in damages from LDS or GAL.

objections shall have fourteen (14) days from the date of service of objections to respond thereto.

Failure to file timely objections will constitute a waiver of any appellate rights.

Dated: January 22, 2013  BY THE COURT:

                                                                 s/Lisa Pupo Lenihan
                                                                LISA PUPO LENIHAN
                                                                Chief U.S. Magistrate Judge

cc:       All Counsel of Record
           *Via Electronic Mail*